## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **MARTHA A. BARBER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. CIV-04-1200-R** |
| | ) | |
| **JO ANNE B. BARNHART,** | ) | |
| **Commissioner, Social Security** | ) | |
| **Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration (Commissioner) denying her application for disability insurance benefits. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). The Commissioner has answered and filed the administrative record (hereinafter Tr. _____). Both parties have briefed their respective positions, and thus the matter is at issue. For the reasons stated herein, it is recommended that the decision of the Commissioner be affirmed.

## I. PROCEDURAL HISTORY

Plaintiff filed her application for disability insurance benefits on October 31, 2001, alleging that she became disabled on July 15, 2001, due to bilateral, total knee replacement and resultant pain. Tr. 53-56, 65. The application was denied on initial consideration and on reconsideration at the administrative level. Tr. 28, 29, 30-33, 36-37. Pursuant to Plaintiff's request, a hearing de novo was held before an administrative law judge on March 4, 2004. Tr. 38, 177-211. Plaintiff appeared in person and with a non-attorney

representative, and offered testimony in support of her application.  Tr. 179, 181-201, 209-10. A vocational expert also appeared and testified at the request of the administrative law judge. Tr. 47-48, 201-09.  The administrative law judge issued his decision on April 29, 2004, finding that Plaintiff was not disabled within the meaning of the Social Security Act and therefore she was not entitled to disability insurance benefits.  Tr. 11-13, 14-23.  The Appeals Council denied Plaintiff's request for review on July 30, 2004, and thus the decision of the administrative law judge became the final decision of the Commissioner. Tr. 4-6.

## II.  STANDARD OF REVIEW

The Tenth Circuit Court of Appeals has summarized the applicable standard of review as follows:

> We review the agency's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  However, a decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it.  The agency's failure to apply correct legal standards, or show us it has done so, is also grounds for reversal. Finally, because our review is based on the record taken as a whole, we will meticulously examine the record in order to determine if the evidence supporting the agency's decision is substantial, taking into account whatever in the record fairly detracts from its weight.  However, we may neither reweigh the evidence nor substitute our discretion for that of the Commissioner.

Hamlin v. Barnhart,  365 F.3d 1208, 1214 (10th Cir. 2004) (internal quotations and citations omitted).  The Commissioner follows a five-step sequential evaluation process to determine whether a claimant is disabled. Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir. 1988).  The claimant bears the burden of establishing a prima facie case of

disability at steps one through four. Id. at 751, n. 2.  If the claimant successfully meets this burden, the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient residual functional capacity to perform work in the national economy, given her age, education, and work experience. Id. at 751.

## III.  THE ADMINISTRATIVE LAW JUDGE'S DECISION

In determining that Plaintiff was not disabled, the administrative law judge followed the sequential evaluation process set forth in 20 C.F.R. § 404.1520.  Tr. 15.  He first found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of July 15, 2001. Tr. 15, 22.  At steps two and three, the administrative law judge found that Plaintiff suffered from a history of bilateral knee replacement with significant knee pain, and that her impairments were severe but not severe enough to meet or equal one of the impairments listed in 20 C.F.R. Part 404, Appendix 1, Subpart P, Social Security Regulations, No. 4.  Tr. 16, 19.  At the fourth step of the sequential evaluation process, the administrative law judge found that Plaintiff could not perform her past relevant work as a bartender, waitress, meat clerk, cashier, and candy factory packer. Tr. 20-21. However, using the Medical-Vocational Guidelines[1] (Grids) as a framework and the testimony of the vocational expert, the administrative law judge found that there are a significant number of jobs in the national economy that someone with Plaintiff's residual functional capacity and vocational factors could perform, such as front desk receptionist, telephone salesperson, and control clerk. Tr. 21-22. Thus, the administrative law judge found that Plaintiff was not disabled and was not entitled to disability insurance benefits.  Tr. 21-23.

---

[1]20 C.F.R. pt. 404, subpt. P, App. 2.

**IV.  DISCUSSION**

  **A.  ISSUES ON APPEAL**

On appeal, Plaintiff first alleges that the administrative law judge erred in finding that she had transferable skills and in making that finding, failed to follow the required analysis. Plaintiff's Opening Brief, p. 13-19. Second, Plaintiff claims that the administrative law judge's credibility analysis was contrary to law and not supported by substantial evidence.  Id. at 20-23.  Finally, she claims that the administrative law judge relied upon vocational testimony that was in conflict with the Dictionary of Occupational Titles without obtaining a reasonable explanation for that conflict from the vocational expert. Id. at 24-25.

  **B.  ANALYSIS**

    **1.  Transferable Skills**

In her first point of error, Plaintiff claims that the administrative law judge failed to conduct a proper analysis with regard to the specific skills she acquired in her past jobs, and with regard to how these skills would meet the requirements of the alternative jobs identified by the vocational expert.  Rather, she claims that he relied upon job titles alone. She also argues that the skills the administrative law judge found that she had acquired in her past work are commonly performed in unskilled jobs, and thus cannot be considered transferable skills under applicable case law, regulations, and agency rulings. Plaintiff's Opening Brief, p. 14-16.

In response, the Commissioner first argues that the administrative law judge did not need to obtain vocational expert testimony regarding transferability of skills because even without any transferable skills, Plaintiff could have been found disabled using Rule 201.22

4

of the Medical-Vocational Guidelines. Commissioner's Brief, p. 3-4.  Next, she contends that because Plaintiff did not question the vocational expert on the issue of whether the transferable skills identified are commonly performed in unskilled jobs, she should not be allowed to urge this point on appeal.  Commissioner's Brief, p. 5. The Commissioner also argues that the administrative law judge properly relied upon the vocational expert's testimony both as to the transferability of skills and as to the jobs to which those skills would relate. Commissioner's Brief, p. 5. Finally, the Commissioner contends that the administrative law judge engaged in a proper analysis regarding transferability of skills. Commissioner's Brief, p. 6.

At the outset, the Commissioner argues that the administrative law judge alternatively found Plaintiff not disabled on the basis of Rule 201.22 of the Medical-Vocational Guidelines, and that even if Plaintiff had no transferable skills,  the grids could direct a finding of not disabled. Thus, she contends, there was no need for vocational testimony and no need for the undersigned to consider the transferability-of-skills issue. Plaintiff's reply is that the administrative law judge did not rely on the grids alone, and that the administrative law judge's decision should not be affirmed for reasons other than those stated in his decision. She adds that exclusive reliance upon the grids would have been improper in any event because the administrative law judge found that she suffers from nonexertional limitations in the form of mild to moderate levels of discomfort and fatigue.

"The grids set forth presumptions regarding whether jobs exist in significant numbers in the national economy given the particular limitations possessed by the claimant." Trimiar v. Sullivan, 966 F.2d 1326, 1332 (10th Cir. 1992). There are two situations in which the grids may not be applied. First, the grids may not be applied

conclusively in a given case unless the claimant's characteristics precisely match the criteria of a particular grid. <u>Id.</u>  Second, "where nonexertional impairments are also present, the grids alone cannot be used to determine the claimant's ability to perform alternative work." <u>Id.</u> at 1333 (quoting <u>Campbell v. Bowen</u>, 822 F.2d 1518, 1523 n. 2 (10th Cir.1987).  In such a case, vocational expert testimony is required to determine "whether jobs exist for someone with the claimant's precise disabilities." <u>Id.</u> (quoting <u>Ash v. Sullivan</u>, 748 F.Supp. 804,  809 (D. Kan. 1990)).

In this case, the administrative law judge correctly recognized that application of the grids alone would have been inappropriate, as his finding states that he used Rule 201.22 of the grids "as a framework for decision-making...." Tr. 22.  Thus, to the extent the Commissioner argues that Plaintiff could have been found disabled using Rule 202.21 of the grids alone, that argument is rejected as inconsistent with both the applicable law and the administrative law judge's own decision.

The Commissioner's next contention – that regarding waiver – is disposed of easily, as the Supreme Court has ruled that a plaintiff challenging a denial of disability benefits under 42 U.S.C. § 405(g) need not preserve issues in proceedings before the Commissioner. <u>See</u> <u>Sims v. Apfel</u>, 530 U.S. 103, 111 (2000) (Appeals Council, not the claimant, has primary responsibility for identifying and developing the issues); <u>Hackett v. Barnhart,</u> 395 F.3d 1168, 1176 (10th Cir. 2005) (applying rule in <u>Sims</u> to administrative hearing level). The undersigned will thus turn to the merits of Plaintiff's claim of error regarding transferability of skills.

To determine whether Plaintiff has any transferable work skills, the administrative law judge must first consider the skills acquired in Plaintiff's past relevant work. 20 C.F.R. § 404.1568(d)(1). Dikeman v. Halter, 245 F.3d 1182, 1185-86 (10th Cir. 2001) (determination of claimant's specific transferable skills becomes necessary only when there is evidence that claimant acquired transferable skills from past skilled or semi-skilled work). Once an administrative law judge makes a finding that a claimant has transferable skills, he must next "identify the specific skills actually acquired by the claimant and the specific occupations to which those skills are transferable." Id. at 1185.

The undersigned finds that the administrative law judge met these requirements in the present case. In his decision, the administrative law judge noted that the vocational expert identified the following transferable skills from Plaintiff's past relevant work: following complex instructions; taking orders; knowledge[2] of weights and measures; making change; and interacting with the public.[3] Tr. 20. The administrative law judge then made a specific finding that these skills were transferable from semi-skilled work previously performed by Plaintiff. Tr. 22. Contrary to Plaintiff's contention, the administrative law judge did not rely upon job titles alone in making this finding. Instead, the vocational expert, upon whose testimony the administrative law judge relied, based her opinion on "the vocational information in the case file and today's testimony ...." Tr. 202.

---

[2]In the decision, this skill is identified as "public weights and measures," but the vocational expert's testimony described the skill as "knowledge of weights and measures." The undersigned has assumed that the decision contains either a transcription or typographical error. Compare Tr. 20 with Tr. 203.

[3]Although the vocational expert identified "interacting with the public" as a transferable skill, this skill was not identified by the administrative law judge in his decision. See Tr. 203. For some reason, the Plaintiff has assumed that this omission was a typographical error, and therefore, the undersigned has included it. See Plaintiff's Opening Brief, p. 12 n. 11.

Although Plaintiff's hearing testimony regarding her past relevant work was extremely limited, she did complete a sworn work history report in which she answered several specific questions regarding her previous work and described her job duties in some detail. Tr. 74-81. The administrative law judge went on to make a finding as to which specific occupations these skills were transferable: front desk receptionist; telephone salesperson; and control clerk. Tr. 21. Although neither the administrative law judge nor the vocational expert specifically discussed application of these skills to the jobs in question, the identification of the jobs' Dictionary of Occupational Titles (DOT) reference numbers facilitates review of the transferability findings to see if they are supported by substantial evidence. Thus, the undersigned finds no error in the analysis utilized by the administrative law judge in reaching his finding that Plaintiff has transferable skills from her previous employment.

It is Plaintiff's contention, however, that the skills identified by the vocational expert are not in fact transferable because they are commonly performed in unskilled jobs. In support, Plaintiff has attached several job descriptions from the DOT for unskilled jobs which she claims require the same skills identified as transferable by the vocational expert. For example, she claims that the unskilled jobs of patient transporter, DOT No. 355.677-014 and chaperon, DOT No. 359.667-010, both require "following instructions and significant responsibility for people."  Plaintiff's Opening Brief, p. 16.  She adds that "common sense" dictates that some of these instructions are "undoubtedly complex." Id. Plaintiff also claims to have found five unskilled jobs that require taking orders, forty-three unskilled jobs requiring knowledge of weights and measures, and ten requiring the ability to make change.  Id. at 17.

The Commissioner defines a skill as follows:

A skill is knowledge of a work activity which requires the exercise of significant judgment that goes beyond the carrying out of simple job duties and is acquired through performance of an occupation which is above the unskilled level (requires more than 30 days to learn). It is practical and familiar knowledge of the principles and processes of an art, science or trade, combined with the ability to apply them in practice in a proper and approved manner. This includes activities like making precise measurements, reading blueprints, and setting up and operating complex machinery. A skill gives a person a special advantage over unskilled workers in the labor market.

Skills are not gained by doing unskilled jobs, and a person has no special advantage if he or she is skilled or semiskilled but can qualify only for an unskilled job because his or her skills cannot be used to any significant degree in other jobs.

Social Sec. Ruling 82-41, 1982 WL 31389, at *2. In determining whether a claimant has transferable skills, the Commissioner has cautioned administrative law judges to pay "close attention ... to the actual complexities of the job in dealing with data, people, or objects and to the judgments required to do the work," because "[e]ven though semiskilled occupations require more than 30 days to learn, the content of work activities in some semiskilled jobs may be little more than unskilled." Dikeman v. Halter, 245 F.3d 1182, 1185 (10th Cir. 2001) (quoting Social Sec. Ruling 82-41, 1982 WL 31389, at *2). Jobs at the "lower level of semi-skilled work may not produce any transferable skills," and jobs at the higher level of semi-skilled work may involve many tasks that "do not provide a special advantage over unskilled workers." Id.  That being said, the Commissioner has not provided any list of work activities which are per se not to be considered transferable skills.

An administrative law judge is entitled to rely on the testimony of a vocational expert as substantial evidence to find that a claimant has transferable skills from her previous experience.  Heard v. Barnhart, No. 04-7010, 2004 WL 2153871, at **2 (10th Cir.

Sept. 27, 2004);[4] Hargis v. Sullivan, 945 F.2d 1482, 1492 (10th Cir.1991) ("a vocational expert may be called for the limited purpose of determining whether the claimant's skills acquired during past work would transfer to a category containing the exertional level the administrative law judge has concluded the claimant could perform."). In reaching his finding regarding Plaintiff's transferable skills, the administrative law judge in this case relied upon the testimony of a qualified vocational expert. Tr. 49-52, 202. Although Plaintiff has attempted to draw "common sense" conclusions as to whether certain work activities are skills based upon whether similar work activities are contained in the DOT descriptions of both unskilled and skilled occupations, a vocational expert has the expertise to determine whether a particular semi-skilled occupation entails "knowledge of a work activity which requires the exercise of significant judgment that goes beyond the carrying out of simple job duties."  If so, the worker has "a special advantage over unskilled workers in the labor market." Furthermore, other courts have found that transferable skills – such as dealing with the public, handling money, and performing mathematical calculations – can result from work similar to that previously performed by Plaintiff.  Loy v. Secretary of Health & Human Services, 901 F.2d 1306, 1310 (6th Cir. 1990) (former clerk-cashier/stocker at toy store had transferable skills of dealing with customers, cashier skills, handling money, and mathematical calculations); Burton v. Secretary of Health & Human Services, 893 F.2d 821, 823 (6th Cir. 1990) (claimant's former job as salesperson-cashier in clothing store resulted in "bundle" of transferable skills, ranging from basic math to customer service and inventory functions).  But see Ross v. Shalala, No. 91-35935, 1993

_____

[4]This and any other unpublished disposition are cited for persuasive authority pursuant to Tenth Circuit Rule 36.3.

WL 306164, at **2-3 (9th Cir. Aug. 11, 1993) (abilities identified as transferable skills from grocery checker same as those identified in connection with unskilled Cashier II occupation, thus by definition were not skills). Cf. Dikeman v. Halter, 245 F.3d 1182, 1186 (10th Cir. 2001) (vocational expert did not identify what specific skills claimant acquired as a grocery checker, thus decision not supported by substantial evidence); Ogle v. Barnhart, No. 04-6129, 2005 WL 388735, at **2 (10th Cir. Feb. 18, 2005) (claimant's minimal descriptions of her past jobs were insufficient to document acquisition of skills of "customer service, interpersonal type skills, working with the public on more than a superficial basis").

In light of the foregoing, the undersigned finds that the administrative law judge engaged in a proper analysis in reaching his finding regarding Plaintiff's transferable skills. Moreover, the testimony of the vocational expert provides substantial evidence to support that finding.  Accordingly, it is recommended that Plaintiff's first claim of error be denied.

## 2. Credibility Analysis

As her next claim of error, Plaintiff contends that the administrative law judge's credibility analysis is contrary to law and not supported by substantial evidence. Plaintiff's Opening Brief, p. 19.  In particular, Plaintiff claims that although the administrative law judge recited the factors to be applied in making a credibility determination, he did not apply those factors to the facts of the case.  Id. at 21.  The Commissioner responds that credibility determinations are peculiarly the province of the factfinder, and should not be overturned when supported by substantial evidence. Commissioner's Brief, p. 7.  The Commissioner further contends that the administrative

law judge provided specific explanations of the evidence which led him to discount Plaintiff's complaints.  Id.

Since credibility determinations are peculiarly the province of the finder of fact, they will not be upset on appellate review when they are supported by substantial evidence. Diaz v. Secretary of Health and Human Services, 898 F.2d 774, 777 (10th Cir. 1990); Kepler v. Chater, 68 F.3d 387, 391 (10th Cir.1995) (same). The standard for reviewing allegations of disabling pain is well established.  In accordance with Luna v. Bowen, 834 F.2d 161, 163 (10th Cir. 1987), the administrative law judge must consider (1) whether Plaintiff has established a pain-producing impairment by objective medical evidence; (2) if so, whether there is at least a "loose nexus" between the impairment and Plaintiff's subjective allegations of pain; and (3) if so, whether, considering all of the evidence, both objective and subjective, Plaintiff's pain is in fact disabling.  In this case, the administrative law judge cited to this rule and presumably concluded that Plaintiff did have a pain-producing impairment as he stated that he does "believe the [Plaintiff] has a certain amount of pain," and then went on to consider if her pain was in fact disabling. Tr. 20.

"When the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms has been established, the intensity, persistence, and functionally limiting effects of the symptoms must be evaluated to determine the extent to which the symptoms affect the individual's ability to do basic work activities." Social Security Ruling 96-7p, 1996 WL 374186, at *1.  Some of the factors that may be considered in assessing a claimant's credibility as to her

disabling pain include (1) her  daily activities; (2) the location, duration, frequency, and intensity of her pain; (3) factors that precipitate and aggravate the pain; (4) the type, dosage, effectiveness, and side effects of any medication she receives or has received for relief of pain; (5) treatment, other than medication, the claimant has received for relief of pain; and (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms.  Social Security Ruling 96-7p, 1996 WL 374186, * 3; 20 C.F.R. § 404.1529(c)(3); Luna, 834 F.2d at 164-66.  In assessing a claimant's credibility, an administrative law judge must state the evidence upon which he relies.  Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). He is not, however, required to undertake a factor by factor analysis and discuss every piece of evidence in the record.  Id. In this case, the administrative law judge's credibility determination is supported by substantial evidence and thus should be affirmed.

    At the outset of his analysis, the administrative law judge noted that he carefully considered the Plaintiff's medical evidence and listened to her testimony at the hearing. Tr. 20. In finding that Plaintiff did not have totally disabling pain, the administrative law judge noted that physical changes associated with severe intractable pain over an extended period of time were not present to a significant degree in the medical record, and that Plaintiff's statements regarding her limitations did not rise to that level. Tr. 20. Earlier in the decision, the administrative law judge summarized those statements, including:  Plaintiff lives alone in a house; takes Vioxx and occasionally Darvocet for

pain; is a full-time student attending classes three days a week for four hours[5] with a 3.5 grade-point average; has daily activities including laundry, dishes, and some cooking; and that she gets up at 7:00 a.m., goes to school, and stays there until 3:45 p.m.[6]  Tr. 18. He did note Plaintiff's statements that her doctors gave her medications because she could not afford them, that she can no longer do yard work or lift anything heavy, and that she has been given special accommodations at school so she can get up or down as needed.  Tr. 18-19.  After his finding that Plaintiff's pain was not totally disabling, the administrative law judge again noted that Plaintiff was a full-time college student with normal activities of daily living.  Tr. 20.  Although the administrative law judge did not refer to the specific credibility factors in discussing this evidence, the Tenth Circuit has "not reduced credibility evaluations to formulaic expressions . . . ."  White v. Barnhart, 287 F.3d 903, 909 (10th Cir. 2001) (citation omitted).  The Court explained:  "Kepler does not require a formalistic factor-by-factor recitation of the evidence.  So long as the [administrative law judge] sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of [ Kepler v. Chater, 68 F.3d 387 (10th Cir. 1995)] are satisfied."  Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).

The undersigned finds that the administrative law judge's decision contains a sufficient analysis to allow review of his credibility finding.  Moreover, that finding is

[5]The decision states that Plaintiff attends "four hours for each class," a statement with which Plaintiff takes issue.  However, Plaintiff testified that she is in class from 9:00 a.m. to 1:00 p.m., on Monday, Wednesday and Friday.  Tr. 191-92.

[6]Plaintiff states that this is in error, as she testified at the hearing that "her day ends at 1:00 p.m." Plaintiff's Opening Brief, p. 22.  However, Plaintiff actually testified that she has class until 1:00 p.m., and that she "usually go[es] home" and puts a heating pad on her knees and takes a nap until 5:00 or 6:00 p.m.  Tr. 191, 197.  In an earlier disability report, however, she stated that she got up at 7:00 a.m. to go to school, got to school at 8:00 a.m., got out of school at 3:45 p.m., and went home.  Tr. 86.

14

supported by substantial evidence – particularly Plaintiff's college attendance, and normal activities of daily living. Finally, the administrative law judge did find that Plaintiff suffered from some pain and discomfort, and included restrictions relating to those limitations in his findings as to her residual functional capacity.  In light of this, the undersigned finds that his credibility determination should not be disturbed on appeal.

### 3.  Conflict of Vocational Testimony with Dictionary of Occupational Titles

In her final claim of error, Plaintiff contends that the administrative law judge failed to perform his responsibility to ask about any possible conflict between the evidence offered by the vocational expert and the Dictionary of Occupational Titles (DOT).  Plaintiff's Opening Brief, p. 25.  Plaintiff claims this led to an error in this case in that the vocational expert testified that Plaintiff could perform the job of control clerk, which the expert characterized as a semi-skilled position.  Id.  However, Plaintiff states that the DOT assigns an SVP of five to that position, making it a skilled position under Social Security regulations.  Id.  The Commissioner responds that the information from the vocational expert in this case does not necessarily conflict with the DOT because there could reasonably exist control clerk jobs that are performed at the semi-skilled level.  Commissioner's Brief, p. 8.  Furthermore, the Commissioner argues that even if there is a conflict with regard to the job of control clerk, remand is not necessary because the decision can be affirmed on the basis of the remaining jobs of telephone salesperson and front desk receptionist.  Id,

In Haddock v. Apfel, 196 F.3d 1084, 1091 (10th Cir. 1999), the Court acknowledged that an administrative law judge has the duty to fully develop the record at every stage of the disability determination process. "Questioning a vocational expert about the source of his opinion and any deviations from a publication recognized as authoritative by the agency's own regulations falls within this duty." Id.; accord Social Sec. Ruling 00-4p, 2000 WL 1898704, at *4.  Moreover, the administrative law judge "must investigate and elicit a reasonable explanation for any conflict between the Dictionary [of Occupational Titles] and expert testimony before the [administrative law judge] may rely on the expert's testimony as substantial evidence to support a determination of nondisability."   Haddock, 196 F.3d at 1091.  In this case, the administrative law judge's duty to question the vocational expert about the source of her opinion was satisfied once the vocational expert made it clear that she was relying upon the DOT.  Gibbons v. Barnhart, No. 03-6021, 2003 WL 22969357, at **4 (10th Cir. Dec. 18, 2003); Bivines v. Barnhart, No. 03-1580-JWL, 2004 WL 1771595, at *3 (D. Kan. Aug. 6, 2004) (as vocational expert provided corresponding DOT numbers for each position, administrative law judge had no further duty to investigate).

Of course, as it turns out, there is an actual conflict between the DOT provision and the vocational expert's opinion with regard to the skill level of the job of control clerk.  The DOT lists an SVP level of five for the job of control clerk, making it a skilled occupation under Social Security regulations.  See DOT No. 216.362-022; Social Sec. Ruling 00-4p, 2000 WL 1898704, at *3 ("skilled work corresponds to an SVP of 5-9 in the DOT").  Thus, even if the administrative law judge would have elicited some explanation

16

for the vocational expert's classification of the control clerk job as semi-skilled, the DOT classification of "skilled" would control.  Id.  "[A]djudicators may not rely on evidence provided by a [vocational expert] or other reliable source of occupational information if that evidence is based on underlying assumptions or definitions that are inconsistent with our regulatory policies or definitions" and "[a]lthough there may be a reason for classifying an occupation's skill level differently than in the DOT, the regulatory definitions of skill levels are controlling."  Id.

Thus, Plaintiff argues that since all of her previous jobs were either semi-skilled or unskilled, she is unqualified for the job of control clerk.  Plaintiff's Opening Brief, p. 25.  The Commissioner apparently concedes that Plaintiff's skills would not be transferable to the job of control clerk, if that job were skilled in nature.  Indeed, this appears to be correct under the Commissioner's own rulings and regulations.  Social Sec. Ruling 82-41, 1982 WL 31389, *5 (transferability of skills "most probable and meaningful among jobs in which ... the same or a lesser degree of skill is required, because people are not expected to do more complex jobs than they have actually performed"); 20 C.F.R. 404.1568(d)(2)(i)(same).  However, the Commissioner contends that the administrative law judge's decision can be affirmed on the basis of the remaining jobs.  The DOT describes the job of telephone sales person [telephone solicitor – DOT No. 299.357-014] as a sedentary job with an SVP of 3, which is in agreement with the testimony of the vocational expert. Tr. 203. The vocational expert testified that there are 830 such jobs in Oklahoma, and 40,000 in the United States.  Tr. 203.  Likewise, the testimony of the vocational expert with regard to the job of front desk receptionist [appointment clerk –

237.367-010] is consistent with the DOT, which lists the job as sedentary with an SVP of 3.  Tr. 203.  The vocational expert testified that there are 602 such jobs in Oklahoma, and 79,000 nationally.  Tr. 203.  The vocational expert testified to a possible ten percent reduction, at most, in the number of jobs due to Plaintiff's lack of computer skills.  Tr. 21, 205. Thus, even if the job of control clerk is eliminated, the Commissioner met her burden of showing that there are a significant number of jobs that a person with Plaintiff's residual functional capacity and vocational factors can perform. See Cowans v. Apfel, No. 98-5212, 1999 WL 1244492 at *3 (10th Cir. Dec. 21, 1999) (even if three of the five categories of jobs identified by the vocational expert were eliminated because of conflicts with the Dictionary of Occupational Titles, remaining jobs within the cashier category were plentiful in Oklahoma and the administrative law judge's decision was supported by substantial evidence in the record as a whole).  In Trimiar v. Sullivan, 966 F.2d 1326, 1330 (10th Cir. 1992), the Tenth Circuit noted that it "has never drawn a bright line establishing the number of jobs necessary to constitute a 'significant number' and rejects the opportunity to do so here." Whether considering the occupations identified by the vocational expert in the aggregate or individually, the administrative law judges's significant number determination is supported by substantial evidence in accordance with Tenth Circuit precedent. See Trimiar, 966 F.2d at 1330, 1332 (holding that 650 to 900 jobs in Oklahoma is significant number of jobs); Prince v. Apfel, No. 97-5176, 1998 WL 317525 at *3 (10th Cir. June 11, 1998) (350 jobs in Oklahoma and 50,000 nationwide as a gate tender and 50 jobs in Oklahoma and 20,000 nationwide as a night watchmen constituted significant number of jobs); Rother v. Chater, No. 96-6370,

1997 WL 196692 at *2 (10th Cir. April 23, 1997) (existence of 573 jobs in the local economy supported determination that claimant could perform work which exists in significant numbers in the local economy); <u>Scott v. Shalala</u>, No. 94-5083, 1994 WL 708217 at *2 (10th Cir. Dec. 21, 1994) (finding that work exists in significant numbers based on 195 lens cutter jobs in Oklahoma was supported by substantial evidence). Accordingly, despite the conflict with regard to the skill level required by the job of control clerk, it is recommended that the decision of the Commissioner be affirmed.

### **RECOMMENDATION**

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the administrative law judge and the pleadings and briefs of the parties, the undersigned Magistrate Judge finds that the final decision of the Commissioner of the Social Security Administration should be affirmed. The parties are advised of their right to file an objection to the Report and Recommendation with the Clerk of this Court by June 30, 2005, in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 72.1.  This Report and Recommendation disposes of all of the issues referred to the undersigned Magistrate Judge in the captioned matter.

Entered this 10th day of June, 2005.


_____
DOYLE W. ARGO
UNITED STATES MAGISTRATE JUDGE